UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
------------------------------X
                              :
PAUL GERMANO                  :    Civil No. 3:22CV00600(SALM)
                              :
v.                            :
                              :
COMMISSIONER QUIROS;          :
DR. KOCIENDA, Ph.D;           :
DR. PIERRE, Ph.D; and         :
CSW BILL GILLIAND             :    August 1, 2022
                              :
------------------------------X
```

INITIAL REVIEW ORDER

Self-represented plaintiff Paul Germano ("plaintiff" or "Germano"), a sentenced inmate at MacDougall-Walker Correctional Institution ("MacDougall"),[1] brings this action relating to events allegedly occurring during his incarceration in the custody of the Connecticut Department of Correction ("DOC"). Plaintiff filed this action on April 27, 2022. See Doc. #1. Plaintiff brings this action pursuant to 42 U.S.C. §1983 against four DOC employees: Commissioner of Corrections Angel Quiros;

_____

[1] The Court may take judicial notice of matters of public record. See, e.g., Mangiafico v. Blumenthal, 471 F.3d 391, 398 (2d Cir. 2006); United States v. Rivera, 466 F. Supp. 3d 310, 313 (D. Conn. 2020) (taking judicial notice of BOP inmate location information); Ligon v. Doherty, 208 F. Supp. 2d 384, 386 (E.D.N.Y. 2002) (taking judicial notice of state prison website inmate location information). The Court takes judicial notice of the Connecticut DOC website, which reflects that Germano was sentenced on September 20, 2018, to a term of imprisonment that has not expired, and that he is held at MacDougall. See http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=2 30976 (last visited July 29, 2022).

Dr. Kocienda, Ph.D., "head psychologist" at DOC; Dr. Pierre, Ph.D., a "supervising psychologist" at MacDougall; and Clinical Social Worker ("CSW") Bill Gilliand at MacDougall. Doc. #1 at 1, 4.[2] All defendants are sued "in their individual and official capacities[,]" id. at 1, and plaintiff seeks damages and injunctive relief. See id. at 16.[3]

Plaintiff states that "he previous to this complaint filed a Federal civil suit against Connecticut Department of corrections staff in which he reached a settlement and it was signed on July 24, 2021 which had to do with several similar circumstances which are mentioned in this complaint[.]" Id. at 4

---

[2] Plaintiff originally brought this action against two additional DOC employees: Dr. Freston, M.D., "head medical doctor" at DOC, and Advanced Practice Registered Nurse ("APRN") Jean Caplan. Doc. #1 at 1, 4. On June 22, 2022, plaintiff filed a motion to withdraw the Complaint as to defendants Freston and Caplan. See Doc. #19 at 1. On that same date, defendants filed a Notice "consent[ing] to plaintiff's motion to withdraw the complaint as to defendants Caplan and Freston." Doc. #20 at 1. On June 27, 2022, the Court granted plaintiff's motion and dismissed defendants Freston and Caplan. See Doc. #21. Accordingly, this Initial Review Order addresses only the claims against the four remaining defendants.

[3] "In this circuit, an inmate's transfer from a prison facility generally moots claims for declaratory and injunctive relief against officials of that facility." Salahuddin v. Goord, 467 F.3d 263, 272 (2d Cir. 2006). At the time the Court reviewed plaintiff's motion for leave to proceed in forma pauperis, plaintiff was housed at Osborn Correctional Institution ("Osborn"). See Doc. #10 at 1. The DOC website reflects that plaintiff has since been transferred back to MacDougall, the facility at which plaintiff was confined when the events giving rise to his Complaint occurred.

(sic). Plaintiff asserts that "[h]e is not suing for what happened previous to July of 2021 but only mentions this history for this court so that these current circumstances he is addressing could be more easily understood as they are ongoing still to this day." Id. (sic). The Court thus reads plaintiff's Complaint to be limited to events that occurred after July 24, 2021.

The Court construes plaintiff's Complaint as asserting: (1) a First Amendment retaliation claim; (2) an Eighth Amendment conditions of confinement claim; and (3) an Eighth Amendment deliberate indifference to serious medical needs claim.

## I.   LEGAL STANDARD

Under section 1915A of Title 28 of the United States Code, the Court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. §1915A(a). The Court then must "dismiss the complaint, or any portion of the complaint, if" it "is frivolous, malicious, or fails to state a claim upon which relief may be granted; or ... seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. §1915A(b). Dismissal under this provision may be with or without prejudice. See Shakur v. Selsky, 391 F.3d 106, 112 (2d Cir. 2004). Section 1915A "applies to all civil complaints brought by prisoners against governmental officials or entities

regardless of whether the prisoner has paid a filing fee." Abbas
v. Dixon, 480 F.3d 636, 639 (2d Cir. 2007) (citation and
quotation marks omitted).[4]

A civil complaint must include sufficient facts to afford
defendants fair notice of the claims and the grounds upon which
they are based and to demonstrate a plausible right to relief.
See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-56 (2007).
Conclusory allegations are not sufficient. See Ashcroft v.
Iqbal, 556 U.S. 662, 678 (2009). Rather, a plaintiff must plead
"enough facts to state a claim to relief that is plausible on
its face." Twombly, 550 U.S. at 570.

It is well-established that "[p]ro se complaints 'must be
construed liberally and interpreted to raise the strongest
arguments that they suggest.'" Sykes v. Bank of Am., 723 F.3d
399, 403 (2d Cir. 2013) (quoting Triestman v. Fed. Bureau of
Prisons, 470 F.3d 471, 474 (2d Cir. 2006)). However, even self-
represented parties must satisfy the basic rules of pleading,
including the requirements of Rule 8. See, e.g., Wynder v.
McMahon, 360 F.3d 73, 79 n.11 (2d Cir. 2004) ("[T]he basic
requirements of Rule 8 apply to self-represented and counseled
plaintiffs alike."). A complaint, even one filed by a self-

---

[4] Plaintiff's Motion for Leave to Proceed in Forma Pauperis was
denied on May 4, 2022. See Doc. #10. On May 12, 2022, plaintiff
paid the full filing fee.

represented plaintiff, may be dismissed if it fails to comply with Rule 8's requirements "that a complaint must set forth a short and plain statement of the basis upon which the court's jurisdiction depends and of a claim showing that the pleader is entitled to relief." <u>Prezzi v. Schelter</u>, 469 F.2d 691, 692 (2d Cir. 1972).

## II.   <u>PHYSICAL HEALTH ALLEGATIONS</u>

The Complaint focuses almost entirely on allegations regarding plaintiff's mental health. However, at the end of the substantive allegations of the Complaint is a section entitled "Medical issues (rectal fissure/non soy diet needs)" which occupies just over one page. Doc. #1 at 12-13. In this section, the only allegations made are against Dr. Freston and APRN Jean Caplan. Both of those defendants have been voluntarily dismissed by plaintiff. <u>See</u> Doc. #21. Accordingly, the allegations in this brief section of the Complaint are not viable, and the Court will consider these claims dismissed, as well. The Court's review of the Complaint will be limited to the allegations regarding plaintiff's mental health set forth in the other sections of the Complaint.

## III.  <u>DISCUSSION</u>

### A.   **Personal Involvement -- Defendant Quiros**

Plaintiff appears to assert claims based on supervisory liability against Commissioner Angel Quiros.

When bringing a claim pursuant to §1983, "a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" Tangreti v. Bachmann, 983 F.3d 609, 618 (2d Cir. 2020) (quoting Iqbal, 556 U.S. at 676). A constitutional "violation must be established against the supervisory official directly[,]" and cannot be based solely on a theory of supervisory liability. Id. Under this rule, a supervisory official is not personally involved in a violation of a plaintiff's constitutional rights simply "by reason of [the official's] supervision of others who committed the violation." Id. at 619.

Plaintiff names Commissioner Quiros as a defendant in the Complaint, but makes no allegations regarding any conduct by Commissioner Quiros. "[I]t is not sufficient to merely name an individual defendant in [the] complaint; [plaintiff] must include factual allegations regarding their personal involvement in the alleged deprivation of his rights." Sam v. City of New York, No. 14CV03253(CBA)(LB), 2014 WL 6682152, at *4 (E.D.N.Y. Nov. 24, 2014). Accordingly, all claims against defendant Quiros are **DISMISSED, without prejudice.**

### B.  First Amendment Retaliation

The Court construes the Complaint as asserting a First Amendment retaliation claim against Dr. Kocienda, in his

individual and official capacities.[5]

The Second Circuit has "instructed district courts to approach prisoner retaliation claims with skepticism and particular care, because virtually any adverse action taken against a prisoner by a prison official -- even those otherwise not rising to the level of a constitutional violation -- can be characterized as a constitutionally proscribed retaliatory act." Dolan v. Connolly, 794 F.3d 290, 295 (2d Cir. 2015) (citation and quotation marks omitted). Thus, the Court of Appeals has "required that such claims be supported by specific and detailed factual allegations, not stated in wholly conclusory terms." Id. (citations and quotation marks omitted).

To plead a viable First Amendment retaliation claim, an inmate must plausibly allege "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against [him], and (3) that there was a causal connection between the protected speech and the adverse action." Brandon v. Kinter, 938 F.3d 21, 40 (2d Cir. 2019) (citation and quotation marks omitted).

Plaintiff alleges that Dr. Kocienda has retaliated against him because plaintiff previously filed lawsuits and other forms of complaints. See Doc. #1 at 7. Specifically, plaintiff asserts

---

[5] The Court will address all claims against defendants in their official capacities separately. See infra Section III.E.

that Dr. Kocienda refuses to order that plaintiff be housed in a single cell. See id. (alleging that "he has only had a cellmate for the past 3 or 4 months, (before that he was being kept by himself)[]" even though "[s]everal other cells are open currently for them to house this plaintiff in where he would not mentally decompensate" (sic)); id. at 8 (alleging that Dr. Kocienda "would go out of his way to tell counselors and unit managers to force plaintiff into a cell with someone even when he was already being kept by himself" (sic)). Plaintiff also alleges that Dr. Kocienda prevented his transfer from Osborn to Garner Correctional Institution because of a prior lawsuit. See id. at 10.

The filing of lawsuits and complaints is protected conduct. See Espinal v. Goord, 558 F.3d 119, 128-29 (2d Cir. 2009) ("There is no dispute that [plaintiff's] earlier federal lawsuit ... was a protected activity."); Miller v. Lamont, No. 3:20CV00872(MPS), 2020 WL 6136300, at *8 (D. Conn. Oct. 19, 2020) ("The Second Circuit has repeatedly recognized that the filing of a written prison grievance or complaint constitutes protected conduct or speech in the context of a First Amendment retaliation claim." (collecting cases)). At this stage, the Court will permit plaintiff's retaliation claim to proceed against Dr. Kocienda, in his individual capacity, for damages.

### C.  Eighth Amendment Conditions of Confinement

The Court construes the Complaint as asserting an Eighth Amendment conditions of confinement claim against Dr. Kocienda, in his individual and official capacities. See Perez v. Arnone, 600 F. App'x 20, 22-23 (2d Cir. 2015) (construing an inmate's request for a single cell as a conditions of confinement claim).

"The Eighth Amendment does not mandate comfortable prisons, but prisons nevertheless must provide humane conditions of confinement[.]" Willey v. Kirkpatrick, 801 F.3d 51, 66 (2d Cir. 2015) (citations and quotation marks omitted); see also Rhodes v. Chapman, 452 U.S. 337, 347 (1981) (To satisfy the objective component of an Eighth Amendment claim, a prisoner must demonstrate that his conditions of confinement alone or in combination resulted in "unquestioned and serious deprivations of basic human needs" or "deprive[d] [him] of the minimal civilized measures of life's necessities."). "Under the Eighth Amendment, sentenced prisoners are entitled only to adequate food, clothing, shelter, sanitation, medical care and personal safety." Waring v. Meachum, 175 F. Supp. 2d 230, 238 (D. Conn. 2001) (citations and quotation marks omitted).

Plaintiff asserts that "defendants have disregarded this plaintiffs mental health needs by repeatedly forcing him into cells with problematic inmates and not even allowing this plaintiff a behavioral plan where he can choose his own

9

cellmates[.]" Doc. #1 at 8 (sic).

Generally, "[t]he Constitution does not guarantee a prisoner a right to a single cell." Germano v. Cook, No. 3:19CV01204(JAM), 2020 WL 264763, at *11 (D. Conn. Jan. 17, 2020) (collecting cases). However, where a plaintiff has a "medical or mental health diagnosis that would require his confinement in a single cell[,]" the denial of a single cell may support an Eighth Amendment claim. Jarecke v. Hensley, 552 F. Supp. 2d 261, 266 (D. Conn. 2008); cf. Abrams v. Waters, No. 3: 17CV01659(CSH), 2018 WL 1469057, at *6 (D. Conn. Mar. 26, 2018) ("In summary, unless an inmate can substantiate a medical or mental health diagnosis that would require confinement in a single cell, he has failed to demonstrate a likelihood of success on the merits." (citation and quotation marks omitted)).

Plaintiff asserts that he "meets the criteria for single cell status as he suffers from significant [Post-Traumatic Stress Disorder 'PTSD'], sexual trauma/abuse issues and deteriorates in a shared cell." Doc. #1 at 5. Plaintiff alleges that he "regress[es] mentally when forced into a shared cell." Id. at 8. Plaintiff alleges that Dr. Kocienda "would go out of his way to tell counselors and unit managers to force plaintiff into a cell with someone even when he was already being kept by himself as there were open cells on the unit to keep him in." Id. Plaintiff does not allege that any of the other individual

defendants had any role in assigning him to a cell with a cellmate.

The Court is not persuaded that plaintiff's allegations will prove sufficient to satisfy the high standard of an Eighth Amendment conditions of confinement claim. However, given plaintiff's allegations that he has a "mental health diagnosis that would require his confinement in a single cell[,]" Jarecke, 552 F. Supp. 2d at 266, the Court will permit plaintiff's claim to proceed for further development against Dr. Kocienda, in his individual capacity, for damages.

### D.  Eighth Amendment Deliberate Indifference to Serious Medical Needs

The Court construes the Complaint as bringing a claim against defendants Pierre and Gilliand, in their individual and official capacities,[6] for deliberate indifference to serious medical needs for failure to treat his mental health conditions.

The Supreme Court has held that

> deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. This is true whether the indifference is manifested by

---

[6] The Court further construes this claim as being brought against Dr. Kocienda, in his official capacity, as discussed below. See infra Section III.E.2. Plaintiff alleges that Dr. Kocienda is a supervising psychologist at the DOC, see Doc. #1 at 1, and is directly involved in plaintiff's care to at least some degree. See Doc. #1 at 7 (alleging that Dr. Kocienda dismissed his Americans with Disabilities request); id. at 10 (alleging that Dr. Kocienda denied his transfer despite the transfer being for "mental health reasons").

> prison doctors in their response to the prisoner's needs
> or by prison guards in intentionally denying or delaying
> access to medical care or intentionally interfering with
> the treatment once prescribed. Regardless of how
> evidenced, deliberate indifference to a prisoner's
> serious illness or injury states a cause of action under
> §1983.

Estelle v. Gamble, 429 U.S. 97, 104-05 (citations, quotation marks, and footnotes omitted). "[O]nly those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." Wilson v. Seiter, 501 U.S. 294, 298 (1991) (citations and quotation marks omitted).

> A deliberate indifference claim has two elements. The
> first, which is objective, requires the inmate to show
> that he was actually deprived of adequate medical care
> by an official's failure to take reasonable measures in
> response to a sufficiently serious medical condition.
> The second element, which is subjective, requires the
> inmate to demonstrate that the official acted with a
> culpable state of mind of subjective recklessness, such
> that the official knew of and consciously disregarded an
> excessive risk to inmate health or safety. Mere
> allegations of negligent malpractice do not state a
> claim of deliberate indifference.

Thomas v. Wolf, 832 F. App'x 90, 92 (2d Cir. 2020) (citations and quotation marks omitted). In sum, an inmate bringing a deliberate indifference claim must show an objectively serious deprivation of medical care, and a "sufficiently culpable state of mind." Morgan v. Dzurenda, 956 F.3d 84, 89 (2d Cir. 2020) (citation and quotation marks omitted).

Under the objective prong, the inmate's medical need or

condition must be "a serious one." <u>Brock v. Wright</u>, 315 F.3d 158, 162 (2d Cir. 2003). "A condition of urgency, one that may produce death, degeneration, or extreme pain must exist." <u>Nails v. Laplante</u>, 596 F. Supp. 2d 475, 480 (D. Conn. 2009) (citation and quotation marks omitted). The Second Circuit has identified a number of factors relevant to the question of seriousness, including "whether a reasonable doctor or patient would find it important and worthy of comment, whether the condition significantly affects an individual's daily activities, and whether it causes chronic and substantial pain." <u>Young v. Choinski</u>, 15 F. Supp. 3d 172, 182 (D. Conn. 2014) (citations and quotation marks omitted). A court may also consider whether the denial of medical care results in further injury or significant pain. <u>See</u> <u>id.</u>

Under the subjective prong, a defendant "must have been actually aware of a substantial risk that the inmate would suffer serious harm as a result of his or her actions or inactions." <u>Nails</u>, 596 F. Supp. 2d at 480. "Mere negligence will not support a section 1983 claim; the Eighth Amendment is not a vehicle for bringing medical malpractice claims, nor a substitute for state tort law. Thus, not every lapse in prison medical care will rise to the level of a constitutional violation; rather, the conduct complained of must shock the conscience or constitute a barbarous act." <u>Pimentel v. Deboo</u>,

411 F. Supp. 2d 118, 128 (D. Conn. 2006) (citations and quotation marks omitted).

Plaintiff alleges that "[h]e is diagnosed with bipolar d/o with psychotic features, and anxiety d/o which interrupts his daily activities and self care/meditation routines, ... 'PTSD', mixed personality d/o, and severe Attention deficit d/o 'A.D.D., while also he has attempted an undetermined amount of suicides[.]" Doc. #1 at 5 (sic). Plaintiff further alleges that he experiences "worsening chest and left arm pain ... whenever [he] gets extremely stressed out due to his severe mental health disorders[.]" Doc. #1 at 13. Plaintiff seeks damages; injunctive relief, in the form of "an immediate and permanent single cell status[;]" for defendants to provide him "with a behavioral plan which will allow him to choose his own mature and calm cellmates if the defendants insist that he live in a cell with someone[;]" and for defendants to "provide him with a transfer hold to any level 4 facility[.]" Id. at 16.

Plaintiff has sufficiently alleged, for purposes of initial review, that his medical condition is "a serious one." Brock, 315 F.3d at 162; see also Young, 15 F. Supp. 3d at 184 (D. Conn. 2014) (finding that a plaintiff "suffering from post-traumatic stress disorder, borderline personality disorder and antisocial personality disorder[]" had a serious medical condition for purposes of the objective prong); Cruz-Droz v. Marquis, No.

14

3:17CV01291(MPS), 2018 WL 1368907, at *5 (D. Conn. Mar. 16, 2018) ("Drawing all reasonable inferences in favor of the plaintiff at the pleadings stage, the Court concludes that plaintiff sufficiently alleges that his need for treatment was sufficiently serious, as he suffered from increased anxiety, panic attacks, insomnia, and post-traumatic stress syndrome[.]"). Thus, the Court turns to the subjective prong for each of plaintiff's specific claims.

### 1.   Security Re-Classification and Transfer Hold

Plaintiff alleges that he cannot safely be housed in a "level 3 facility[,]" such as Carl Robinson Correctional Institution ("Carl Robinson"), which plaintiff describes as a "dorm facility in which over 100 men live together in a huge gymnasium type room and the noise and stimuli are non-stop[,]" or Osborn, which plaintiff states "has bars for cell doors for or units where all the cell doors have openings instead of windows in which case the noise and stimuli is just as bad as a dorm facility." Doc. #1 at 9. Plaintiff alleges that "[t]hese types of environments are pure torture for this plaintiff given his ptsd stress/anxiety issues[.]" Id. (sic). Plaintiff further alleges that he will intentionally "receive several disciplinary tickets which will raise [his overall] level" to be transferred back to a Level 4 facility. Id. at 14. Effectively, plaintiff is seeking an order of the Court requiring the DOC to classify him

at Level 4, rather than Level 3, to prevent his transfer to a
Level 3 facility, such as Carl Robinson or Osborn.[7]

"Inmates have no constitutionally protected right to be
confined in any particular correctional facility or housing
unit." Jarecke, 552 F. Supp. 2d at 265 (collecting cases). As
such, "the improper classification of inmates in the custody of
the Connecticut Department of Correction does not give rise to a
civil rights action." Torres v. Stewart, 263 F. Supp. 2d 463,
469 (D. Conn. 2003); see also Taylor v. Levesque, 246 F. App'x
772, 774 (2d Cir. 2007) ("It is well settled that prisoners
generally do not have a protected liberty interest in
classifications[.] ... Moreover, Connecticut has not granted
inmates, by regulation or statute, a protected interest in their
security classification; the matter is committed to the
discretion of the Commissioner of Corrections.").

Plaintiff alleges that defendants Pierre and Gilliand
refused to prevent his transfer "to a level 3 facility" even
though "it is very obvious that they should know of the risk he
is in being sent to those level 3 facilities[.]" Doc. #1 at 11

---

[7] Carl Robinson and Osborn are both designated as Level 3
facilities. See Osborn Correctional Institution,
https://portal.ct.gov/DOC/Facility/Osborn-CI (last visited July
29, 2022); Robinson Correctional Institution,
https://portal.ct.gov/DOC/Facility/Robinson-CI (last visited
July 29, 2022). Thus, an inmate with a Level 3 classification
could be housed at either Carl Robinson or Osborn.

(sic). Plaintiff asserts "that it is only a matter of time before doc staff decide to transfer him either back to osborn facility or carl robinson dorm facility and he ... simply cannot tolerate level 3 facilities" due to his mental health condition. Id. (sic). A review of the DOC Administrative Directives suggests that persons in the positions allegedly occupied by Pierre and Gilliand would have at least some influence in determining plaintiff's classification, due to their roles in his mental health care.[8]

Inmates in the custody of the DOC are "classified according to risk and needs," and are "assigned an overall risk score of one (1) to five (5)." A.D. 9.2 at 2. An inmate's classification

---

[8] The policies and procedures regarding classification of inmates in DOC custody are discussed in DOC Administrative Directives. Thus, the Court takes judicial notice of DOC Administrative Directive 9.1 ("A.D. 9.1"), effective November 13, 2012, see State of Connecticut Department of Correction, Administrative Directive 9.1: Population Management, (Nov. 13, 2012), https://portal.ct.gov/-/media/DOC/Pdf/Ad/AD9/AD_0901_Effective_11132012.pdf, and Administrative Directive 9.2 ("A.D. 9.2"), effective July 1, 2006. See Administrative Directive 9.2: Inmate Classification, (Jul. 1, 2006), https://portal.ct.gov/-/media/DOC/Pdf/Ad/AD9/AD_0902_Effective_07012006.pdf; see also Nicholson v. Murphy, No. 3:02CV01815(MRK), 2003 WL 22909876, at *7 n.2 (D. Conn. Sept. 19, 2003) ("The Administrative Directives are written guidelines, promulgated pursuant to Connecticut General Statutes §18-81, establishing the parameters of operation for Connecticut correctional facilities. ... [T]his court takes judicial notice of Connecticut Department of Correction Administrative Directive 9.6."); Baltas v. Jones, No. 3:21CV00469(MPS), 2021 WL 6125643, at *2 n.1 (D. Conn. Dec. 27, 2021) (taking judicial notice of Administrative Directive 9.4).

allows the DOC to determine the inmate's "appropriate
confinement location[.]" Id. at 1.

"A risk score level 1 ... represent[s] the lowest security
level and 5 the highest. A needs score level 1 ... represent[s]
the lowest need level and 5 the highest." Id. at 2. An inmate's
"level of risk is determined by rating the following factors: 1.
History of escape; 2. Severity/violence of the current offense;
3. History of violence; 4. Length of sentence; 5. Presence of
pending charges, bond amount and/or detainers; 6. Discipline
history; and, 7. Security Risk Group membership." Id. at 3. An
"inmate's needs [are] assessed in the following areas: 1.
Medical and health care; 2. Mental health care; 3. Education; 4.
Vocational training and work skills; 5. Substance abuse
treatment; 6. Sex offender treatment; and, 7. Community
resources." Id. With respect to the needs score, "[a]ssessment
of inmate needs [is] accomplished by classification staff in
conjunction with staff responsible for the evaluation and
provision of services for the need area." Id. at 4.

A.D. 9.1 describes how inmates can be transferred based on
their mental health needs. Mental health personnel, potentially
including defendants Pierre and Gilliand, have the authority to
request that "[t]he Director of Offender Classification and
Population Management or designee ... transfer an inmate for
medical or mental health purposes[.]" A.D. 9.1 at 3. The

18

directive further specifies that "the inmate shall be returned to the sending facility as soon as possible <u>unless reclassification or reassignment is warranted</u> and approved by the Director of Offender Classification and Population Management or designee." <u>Id.</u> (emphasis added). In light of the provisions of A.D. 9.1 and A.D. 9.2, and construing plaintiff's allegations "liberally and" interpreting them "to raise the strongest arguments they suggest[,]" <u>Sykes</u>, 723 F.3d at 403 (citation and quotation marks omitted), the Court concludes that plaintiff has plausibly alleged that defendants Pierre and Gilliand have the authority to <u>recommend</u> to the Director of Offender Classification and Population Management that plaintiff be assigned to a Level 4 facility.

Thus, construed extremely generously, plaintiff alleges that his mental health conditions necessitate that he be assigned <u>only</u> to Level 4 facilities, and that defendants Pierre and Gilliand's refusal to recommend that assignment constitutes deliberate indifference to his mental health needs. Plaintiff alleges that defendants Pierre and Gilliand knew of the risks of failing to recommend that plaintiff not be transferred to a Level 3 facility because he "verbally begg[ed] both of them for help[,]" and because had an anxiety attack on March 28, 2022, as a result of being housed in a Level 3 facility. Doc. #1 at 11. The Court will permit plaintiff's deliberate indifference claim

to proceed against defendants Pierre and Gilliand in their
individual capacities, for damages.

    2. <u>Failure to Treat</u>

  Plaintiff also alleges that defendants Pierre and Gilliand
refused to treat his mental health conditions, instead telling
him "to meditate" and "treat[ing] [him] as though he was faking
his mental health issues." <u>Id.</u> at 9. Plaintiff further alleges
that "he is no longer afforded a mental health behavioral plan
which has resulted in his mental decompensation and extreme
emotional damage." <u>Id.</u> at 6. The Court will permit plaintiff's
claim of deliberate indifference to serious medical needs in
violation of the Eighth Amendment on this basis to proceed
against defendants Pierre and Gilliand, in their individual
capacities, for damages.

  **E. Official Capacity Claims**

  Plaintiff brings his claims against all defendants in their
official capacities, in addition to their individual capacities,
seeking injunctive relief.[9] <u>See</u> Doc. #1 at 1, 16. Specifically,
plaintiff asks the Court order the following injunctive relief

---

[9] "To the extent [plaintiff] seeks monetary damages from the
defendants in their official capacities, such claims are barred
by the Eleventh Amendment." <u>Azor v. Semple</u>, No.
3:19CV01068(SRU), 2019 WL 4167072, at *2 (D. Conn. Sept. 3,
2019). Accordingly, the Court construes plaintiff's official
capacity claims as seeking only injunctive relief.

related to his mental health claims: (1) "an immediate and permanent single cell status[;]" (2) "a behavioral plan[;]" and (3) "a transfer hold to any level 4 facility[.]" Id. at 16.[10]

"[U]nder the venerable doctrine of Ex parte Young, 209 U.S. 123 (1908), a plaintiff may sue a state official acting in his official capacity -- notwithstanding the Eleventh Amendment -- for 'prospective injunctive relief' from violations of federal law." In re Deposit Ins. Agency, 482 F.3d 612, 617 (2d Cir. 2007); see also Vega v. Semple, 963 F.3d 259, 281 (2d Cir. 2020) ("[S]uits for prospective relief against an individual acting in his official capacity may be brought to end an ongoing violation of a federal law."). A claim for injunctive relief against a defendant in his or her official capacity may proceed only to the extent that the defendant named has the authority to remedy the alleged ongoing constitutional violation. See Scozzari v. Santiago, No. 3:19CV00229(JAM), 2019 WL 1921858, at *6 (D. Conn. Apr. 29, 2019) (permitting plaintiff's claims for injunctive relief to proceed against certain defendants "insofar as they have the power to remedy what he alleges to be his

---

[10] Plaintiff seeks various other forms of injunctive relief relating to his physical health. See Doc. #1 at 16. However, because plaintiff dismissed all claims against Freston and Caplan, thereby effectively dismissing all claims relating to his physical health, see supra Section II, the Court does not address the injunctive relief sought that pertains solely to any alleged physical conditions.

unconstitutional placement in administrative segregation[]").

The Complaint alleges ongoing constitutional violations; thus, the Court considers whether the named defendants have the authority to provide the relief sought from them.

### 1. Single Cell

The Court construes plaintiff's request for single cell status as being brought against Dr. Kocienda, based on plaintiff's allegations that Dr. Kocienda is preventing him from being housed in a single cell. See Doc. #1 at 7-8. Plaintiff alleges that Dr. Kocienda is the "head psychologist" for DOC. Id. at 1; see also Jusino v. Rinaldi, No. 3:18CV2004(MPS), 2019 WL 1596574, at *1 (D. Conn. Apr. 15, 2019) (referring to Dr. Kocienda as "Director of Psychology Services"). In light of Dr. Kocienda's alleged supervisory status, plaintiff has plausibly alleged that Dr. Kocienda has the authority at least to recommend that plaintiff be provided with a single cell. Thus, plaintiff's First Amendment retaliation and Eighth Amendment conditions of confinement claims may proceed against Dr. Kocienda in his official capacity, as to the request that Dr. Kocienda be ordered to recommend single cell status for plaintiff.

### 2. Behavioral Plan

The Court construes plaintiff's request to be provided with a behavioral plan as brought against defendants Pierre,

Gilliand, and Dr. Kocienda based on his allegations that they
refused to treat his mental health conditions. See Doc. #1 at 6
(alleging that plaintiff "is no longer afforded a mental health
behavioral plan"); id. at 11 (asserting that defendants Pierre
and Gilliand are named as defendants is because they are aware
of his mental health history and needs but refuse to act).
Defendants Pierre, Gilliand, and Dr. Kocienda are alleged to be
mental health professionals within DOC that are directly
involved in plaintiff's care; thus, plaintiff has plausibly
alleged that they have the ability to provide him with a
behavioral plan to address his mental health conditions.
Accordingly, plaintiff's Eighth Amendment deliberate
indifference to serious medical needs claim may proceed against
defendants Pierre, Gilliand, and Dr. Kocienda in their official
capacities, as to the request that they provide him with a
behavioral plan.

      3.   <u>Transfer Hold</u>

     The Court construes plaintiff's request that a "transfer
hold" be imposed as a request to have his classification changed
to a Level 4 to prevent his transfer to a Level 3 facility, or
for the entry of an order prohibiting his transfer to a Level 3
facility regardless of his classification. A.D. 9.2 instructs
DOC staff to determine an inmate's needs score "in conjunction
with staff responsible for the evaluation and provision of

services for the need area." A.D. 9.2 at 4. Here, plaintiff has plausibly alleged that, because Pierre and Gilliand are mental health professionals, and Dr. Kocienda is a supervisory mental health professional, their recommendations would be considered in determining plaintiff's needs score. Additionally, because inmates can be transferred "at the request of ... mental health personnel[,]" A.D. 9.1 at 3, it is plausible, for purposes of initial review, that mental health personnel have the corresponding authority to <u>prevent</u> a transfer. Thus, plaintiff's Eighth Amendment deliberate indifference claim may proceed against defendants Pierre, Gilliand, and Kocienda, in their official capacities, as to the requested injunctive relief of ensuring that plaintiff is not transferred to a Level 3 facility.

IV.  **CONCLUSION**

For the foregoing reasons, the Court enters the following orders:

- All claims against defendant Quiros are **DISMISSED**, **without prejudice**, for lack of personal involvement.

- Plaintiff's First Amendment retaliation claim may proceed against Dr. Kocienda, in his individual capacity, for damages.

- Plaintiff's First Amendment retaliation claim may proceed against Dr. Kocienda, in his official capacity, for the

24

injective relief of recommending plaintiff's placement in a single cell.

- Plaintiff's Eighth Amendment conditions of confinement claim may proceed against Dr. Kocienda, in his individual capacity, for damages.

- Plaintiff's Eighth Amendment conditions of confinement claim may proceed against Dr. Kocienda, in his official capacity, for the injunctive relief of recommending plaintiff's placement in a single cell.

- Plaintiff's Eighth Amendment deliberate indifference to serious medical needs claims may proceed against defendants Pierre and Gilliand in their individual capacities, for damages.

- Plaintiff's Eighth Amendment deliberate indifference to serious medical needs claims may proceed against defendants Pierre, Gilliand, and Dr. Kocienda in their official capacities, for the injunctive relief of providing plaintiff with a behavioral plan.

- Plaintiff's Eighth Amendment deliberate indifference to serious medical needs claims may proceed against defendants Pierre, Gilliand, and Dr. Kocienda, in their official capacities, for the injunctive relief of recommending that plaintiff not be transferred to a Level

3 Facility.

Plaintiff has two options as to how to proceed in response to this Initial Review Order:

**(1)  If plaintiff wishes to proceed to service on the surviving claims as outlined above, he may do so without further delay.** If plaintiff selects this option, he shall file a Notice on the docket on or before **August 31, 2022**, informing the Court that he elects to proceed with service as to the remaining claims. Because plaintiff was not granted leave to proceed in forma pauperis and he has paid the filing fee, **the United States Marshal Service will not effect service.** Plaintiff is responsible for serving each defendant in his individual and official capacities, as outlined above. Service must be made separately as to each capacity.

Regarding **individual capacity service**, the Federal Rules of Civil Procedure permit a party sued in his or her individual capacity to waive service. See Fed. R. Civ. P. 4(d). "The plaintiff may notify such a defendant that an action has been commenced and request that the defendant waive service of a summons." Fed. R. Civ. P. 4(d)(1). The request for waiver of service must adhere to certain requirements, outlined in Fed. R. Civ. P. 4(d)(1)(A)-(G). If plaintiff files a Notice informing the Court that he elects to proceed with service, the Court will then provide plaintiff with the necessary waiver of service

26

forms. If any defendant fails to return a signed waiver of service of summons form, plaintiff must request a summons from the Clerk and arrange for in-person service on him or her in accordance with Rule 4 of the Federal Rules of Civil Procedure.

If defendants do <u>not</u> waive service, plaintiff must serve the summons and complaint on each of them in their individual capacities. Plaintiff is advised that the relevant statute, Conn. Gen. Stat. §52-64(b), "does not authorize service through the Attorney General's office on an individual State employee in his or her individual capacity." <u>Bogle-Assegai v. Connecticut</u>, 470 F.3d 498, 507 (2d Cir. 2006). Connecticut law requires that a defendant sued in his or her individual capacity "be served by leaving a true and attested copy of [the summons and complaint] with the defendant, or at [her] usual place of abode, in this state." Conn. Gen. Stat. §52-57(a); <u>see</u> <u>also</u> <u>Bogle-Assegai</u>, 470 F.3d at 507-08. Plaintiff may use any legal method for service of process, such as a private process server.

Failure to obtain a timely signed waiver or to timely serve any defendant in his or her individual capacity will result in the dismissal of this action as to that defendant in his or her individual capacity.

Regarding **official capacity service**, defendants may not waive service in their official capacities; plaintiff must effect service on each defendant in his or her official

27

capacity. If plaintiff files a Notice informing the Court that he elects to proceed with service, the Court will then provide plaintiff with a summons for each defendant in his or her official capacity. Plaintiff may serve a defendant in his or her official capacity by having **a proper officer** "send[] one true and attested copy of the process, including the summons and complaint, by certified mail, return receipt requested, to the Attorney General at the office of the Attorney General in Hartford." Conn. Gen. Stat. §52-64(b). Because plaintiff is not a "proper officer" as defined by the Connecticut General Statutes, see Conn. Gen. Stat. §52-50(a), "plaintiff's own mailing ... does not qualify as proper service of process." Gooden v. Dep't of Corr., No. 3:09CV02063(RNC), 2010 WL 4974037, at *1 (D. Conn. Dec. 2, 2010). Plaintiff may use any legal method for service of process, such as a private process server. Failure to timely serve any defendant in his or her official capacity will result in the dismissal of this action as to that defendant in his or her official capacity.

   The Complaint must be served within **ninety (90) days** of the date of this Order, that is, on or before **October 31, 2022.** A signed waiver of service or a return of service as to each defendant must be docketed on or before **November 14, 2022.** Failure to timely and properly effectuate service on any defendant in either official or individual capacity will result

28

in the dismissal of this action against that defendant in that capacity.

   *OR, IN THE ALTERNATIVE,*

   **(2)  If plaintiff wishes to attempt to replead any dismissed claims, he may file an Amended Complaint on or before August 31, 2022.** An Amended Complaint, if filed, will completely replace the Complaint, and the Court will not consider any allegations made in the original Complaint in evaluating any Amended Complaint. The Court will review any Amended Complaint after filing to determine whether it may proceed to service of process on any defendants named therein. **If plaintiff elects to file an Amended Complaint, he shall not proceed with service as to the original Complaint.**

   **CHANGES OF ADDRESS**: If plaintiff changes his address at any time during the litigation of this case, he **MUST** file a Notice of Change of Address with the Court. **Failure to do so may result in the dismissal of the case.** Plaintiff must give notice of a new address even if he remains incarcerated. He should write "PLEASE NOTE MY NEW ADDRESS" on the notice. It is not enough to just put a new address on a letter or filing without indicating that it is a new address. He should also notify defense counsel of his new address.

   Plaintiff shall utilize the Prisoner E-filing Program when filing documents with the Court. He is advised that the Program

may be used only to file documents with the Court. Discovery requests and responses should **not** be filed on the docket, except when required in connection with a motion to compel or for protective order. See D. Conn. L. Civ. R. 5(f). Discovery requests and responses or objections must be served on defendants' counsel by regular mail.

It is so ordered this 1st day of August, 2022, at Bridgeport, Connecticut.

                       /s/
                    HON. SARAH A. L. MERRIAM
                    UNITED STATES DISTRICT JUDGE